## NUNN *v.* THE STATE.

1. Where an issue in a criminal case is whether bullet wounds on the back and in front of the body of the deceased were inflicted by the same or different bullets, it is not error to allow a non-expert witness, in describing the wounds, to testify that "the shot that entered from the front and went in the back couldn't have possibly been the same shot."

2. On the trial of one for murder, a declaration by his wife, on being in-

formed by him that he had killed the deceased, that "I begged you never to do that," to which the husband made no response, is admissible in evidence as tending to show malice, under the principle that silence, when the circumstances require an answer or denial, may amount to an admission.

3. An instruction that if the defendant unlawfully and with the intent to take the life of the decedent slew him under circumstances which excluded mitigation or justification, he would be guilty of murder, will not require a new trial on the ground that such instruction excluded malice as an essential element in the crime of murder, where the court in immediate context had defined murder and malice in the language of the code.

4. Where the court charges the law of voluntary manslaughter, an omission to state affirmatively that the jury are the judges of "cooling time" will not require a new trial.

5. The court read to the jury the clause in the Penal Code, § 65, that in all cases of voluntary manslaughter there must be some actual assault upon the person killing, or an attempt by the person killed· to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, etc. He followed it up with an instruction that if the jury should find that "the killing was unlawful and brought about by reason of an endeavor on the part of the deceased to commit a serious personal injury upon the person of the accused, or you find there were other equivalent circumstances sufficient to justify the excitement of passion and to exclude all idea of deliberation and malice, either express or implied, . . you will be authorized to find the defendant guilty of voluntary manslaughter." This charge will not require a new trial, under the facts of the case, on the ground that the instruction omitted a reference to an "actual assault," as furnishing a basis for the reduction of an unlawful homicide from murder to manslaughter.

MAY 12, 1915.

Indictment for murder. Before Judge Rawlings. Toombs superior court. November 12, 1914.

*L. J. Cowart* and *Hines & Jordan,* for plaintiff in error.

*Warren Grice, attorney-general, R. Lee Moore, solicitor-general,* and *A. L. Henson,* contra.

EVANS, P. J. Joe Nunn was convicted of the murder of J. M. Taylor. He moved for a new trial, which was refused. The evidence for the State tended to show that a short time before the homicide the decedent and the defendant had a dispute on the public streets of Vidalia, and the former threatened to slap the defendant's face. The defendant stated to others that he intended to avenge the insult by killing the decedent whenever he caught him out of town. On the day of the homicide the defendant, who was traveling along a public road in a buggy, stopped to converse with

an acquaintance, and while thus engaged in conversation the decedent passed by, traveling in a buggy. The defendant remarked to the man with whom he was conversing that he intended to kill the decedent. The defendant overtook the decedent and shot him in the back, without warning. After the first shot the decedent pleaded with him not to shoot again, but, with an oath, he fired four more shots from a pistol. The defendant's version of the tragedy, as detailed in his statement, was substantially this: When he caught up with the decedent he made an effort to pass him on the road, but the decedent would cut his buggy across the road in an effort to prevent him. He succeeded in passing, and remarked to the decedent, "By the way you are doing it looks like you intend to slap my poor old jaws again." The decedent replied, "God damn you, I want to stamp your God damned liver out," and commanded the defendant to stop. Decedent jumped out of his buggy and caught hold of the top of defendant's buggy, and started to catch hold of his knees; and the defendant commanded him to get away from the buggy. The decedent stepped back, and the defendant drove on. The decedent then jumped into his buggy and came on cursing the defendant, and said that he was going to prosecute the defendant for drawing a pistol on him and raising a row with him on the public road. The defendant replied that he had not raised any row, and had not drawn any pistol, but, when he did, the decedent "would see the smoke of it." Whereupon the decedent used a vile epithet to the defendant and stooped down in his buggy for something; and the defendant raised up his pistol and shot.

1. A witness was allowed to testify, in describing the wounds on the body of the deceased, that "the one in the front and the one in the back could not have possibly been the same shot." Objection was made to this testimony on the ground that it was a mere conclusion or opinion of the witness. Where a non-expert witness has observed the matter in issue, and from the nature of the circumstances he can not adequately state or recite the data so fully and accurately as to put the jury completely in the witness's place and enable them to equally well draw the inference, it is allowable for the witness to give his inference, in connection with the facts upon which it is predicated. *Taylor* v. *State,* 135 *Ga.* 622 (70 S. E. 237).

2.  One of the defendant's witnesses on cross-examination testified:  "I heard a statement made by Mr. Nunn's wife, in Mr. Nunn's presence, just after he got home that day.  After Mr. Nunn said that he had killed that "God damn Mell Taylor, she said 'Dear, Dear, I begged you never to do that.'"  The defendant made no response to his wife.  Where a defendant is on trial for crime, and a statement is made in his presence bearing on his complicity in the crime, or involving his guilt, and he fails to make a reply, his silence may amount to an admission, if the facts and circumstances are such as to require an answer or denial.  Penal Code (1910), § 1029.  This testimony was relevant as tending to show that the defendant had harbored malice against the decedent and had threatened to kill him; and it was for the jury to say whether, under the circumstances attending the making of the statement, the defendant was called upon for an answer or denial.  The circumstance that the statement was made by the wife does not exclude it on the ground that communications between husband and wife are privileged.  *Knight* v. *State*, 114 *Ga.* 48 (39 S. E. 928, 88 Am. St. R. 817).

3.  Several grounds of the motion complain of an instruction to the effect that if the defendant unlawfully and with the intent to take the life of the decedent slew him under circumstances which excluded mitigation or justification, he would be guilty of murder.  The criticism is that such an instruction excluded malice as an essential ingredient in the crime of murder.  The court defined murder and malice in the language of the code.  It clearly appeared from these definitions that malice was an essential element of the crime of murder.  The instruction of which complaint is made, in connection with the context, will not require a new trial, for the reason that the court distinctly informed the jury that they would not be authorized to convict of murder where there were circumstances of mitigation or justification.  *Worley* v. *State*, 136 *Ga.* 231 (71 S. E. 153).

4.  In charging on the law of voluntary manslaughter an omission to state affirmatively that the jury are the judges of "cooling time" will not require a new trial, where the instruction on voluntary manslaughter as given by the court did not undertake to limit the jury's function and province in this respect.  *Worley* v. *State,* supra.

5. The court read to the jury the words of Penal Code section 65, that in all cases of voluntary manslaughter there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, etc. He followed it up with an instruction that if the jury should find that "the killing was unlawful and brought about by reason of an endeavor on the part of the deceased to commit a serious personal injury upon the person of the accused, or you find there were other equivalent circumstances sufficient to justify the excitement of passion and to exclude all idea of deliberation and malice, either express or implied, and you find that the accused took the life of the deceased under such circumstances, not being justifiable under the law of justifiable homicide, which will be shortly given to you, then you will be authorized to find the defendant guilty of voluntary manslaughter." It is contended that this charge excluded from the jury's consideration any assault by the decedent upon the defendant. We do not commend the excerpt which is criticised as being an accurate statement of the law. We recognize that the statute provides that an assault may be sufficient to arouse the passion so as to reduce the homicide from murder to manslaughter, but we do not think the omission to include an actual assault in the instruction complained of should require a new trial under the facts of the case. The defendant's theory, as presented by his statement and evidence, was that the decedent was stooping down as if to get a weapon from his buggy, in execution of a threat which he had just made against the defendant. Certainly, if his version was the truth of the matter, the decedent was undertaking to commit an assault as well as a serious personal injury upon him. The charge of the court could not have been understood by the jury otherwise than as having relation to the actual occurrence as being sufficient to justify the excitement of passion and to exclude all idea of deliberation or malice, either express or implied.

*Judgment affirmed. All the Justices concur except Fish, C. J., absent.*