PARKS, *alias* ALEXANDER, v. THE STATE.

No. 15993.  January 9, 1948.  Rehearing denied February 12, 1948.

*M. G. Hicks, W. T. Maddox,* and *Dudley Magruder,* for plaintiff in error.

*Eugene Cook, Attorney-General, E. J. Clower, Solicitor-General, G. W. Langford, T. J. Espy Jr., and Margaret Hartson, contra.*

JENKINS, Chief Justice. ■ Ground 1 is that, when the State sought to weaken the statement of the defendant to the effect that the blood stains on various portions of his clothing were caused by blood coming from his own private parts, and after the County Physician of Fulton County, where the defendant was incarcerated, had testified without objection that he had no record of having seen the defendant, he was asked the question, "'Would the records which you looked for, doctor, have shown it if any other county physician had treated Fredie Parks during the time he was incarcerated in the Fulton Tower?" To this question the only objection by the defendant's counsel was as follows, "He said it didn't show it and the other question with reference to what it would have shown would certainly be irrelevant and immaterial." Assuming that the absence of any call upon the physician testifying, or any other physician, could be proven as it was without objection, it would certainly be in order to show that such a record would indicate such a call, if such a call had in fact been made.

■ The court did not err in failing to order a mistrial, or to express cautionary words to the jury, on the motion of the defendant for a mistrial on account of a display in the courtroom of a plat or diagram showing the vicinity of the homicide, the tracks testified to, and the scuffle marks in the road near the

bridge and like scuffle marks over in an adjoining field, before certain alleged improper words, legends, and descriptive symbols such as "negro footsteps," "victim's footsteps," "blood," "scuffle marks," etc., had been removed therefrom. The court, after excluding the jury from the courtroom, pointed out that the diagram was not in evidence, had not been identified as correct, and stated that so far as the marks were concerned it was not close enough for the jury to see them, saying, "The court is closer to them than the jury and the court can't see," and further that at the proper time the court would have the marks removed.

■ The court did not err in allowing in evidence the clothes which the defendant himself admitted had been worn by him on the day of the homicide, over the objection that officers had gone to the defendant's house and asked his wife for the clothes worn by him the preceding day (which was the day the homicide occurred), and which clothes had been freely and without any sort of objection delivered by her. The ground of contention is that the wife of the defendant was thus unlawfully made to testify against her husband. It would seem that such a procedure in obtaining the clothes was not an infraction of the rule stated, especially where the evidence seems to indicate clearly that the defendant was present when the clothes were obtained ("He didn't return a word, but she went to the back room and got a shirt and a pair of pants and brought them out and gave them to me") ; and especially so where there was proof that the defendant had admitted that these were the clothes he had worn the day before, which was the day of the homicide. See, in this connection, *Bexley* v. *State,* 141 *Ga.* 1 (4) (80 S. E. 314) ; *Knight* v. *State,* 114 *Ga.* 48 (1) (39 S. E. 928, 88 Am. St. R. 17) ; *Nunn* v. *State,* 143 *Ga.* 451 (2) (85 S. E. 346).

■ Ground 4 of the amended motion is without merit. Counsel for the State asked one of his witnesses: "Now, these tracks that you said you saw coming out—man's tracks coming out— was there any evidence of them coming in any further than the place they turned off?" The objection to this question was: "There wasn't any evidence that any tracks of a man turned off the road. He is leading the witness and we object to it." The court ruled: "Let the jury remember about that. Gentlemen,

I can't help you." It is ofttimes permissible for the court to permit leading questions when it appears that the ends of justice shall so require (Code, § 38-1706), and it is therefore not always erroneous per se to permit such an inquiry. But in this it appears that in point of fact there had been evidence adduced by the witness Russell that "From that point [referring to the first scuffle marks] on up the road to where these big tracks and little tracks were, we could see drops of blood up the road about forty feet. Both tracks turned off to the right and about twenty feet from the road they crossed a fence."

■ The court did not err in admitting the photographs of the deceased where she lay soon after her discovery, because, as alleged, it might tend to inflame the minds of the jury. We think, besides giving the jury an accurate photographic picture of much that had been testified to, it became even more relevant with respect to the testimony of the witness who described the deceased in connection with his testimony as to having seen her in company with other persons late on the afternoon of the day of the homicide. The jury might well have found that the photographs and this description of the deceased did not harmonize.

■ The court did not err in admitting in evidence certain red fibers and certain white fibers taken from the barbed-wire fence, since there was testimony from the Federal investigator going to indicate that these fibers corresponded to the clothing of the deceased and of the defendant respectively.

■ The map or diagram, after the deletion of the objectionable characterizations, was properly admissible for what it was worth, though not made by an expert engineer or draftsman; and its correctness was adequately shown, although a portion of the sustaining proof was made subsequently to its actual admission. See, in this connection, *Nowell* v. *State*, 18 *Ga. App.* 143 (2) (88 S. E. 909).

■ The admission of the plaster cast of the footprints was not error. It is true, as contended by the defendant's counsel, that the defendant admitted that he had traveled this short dirt road leading off from the Huffacre Road to Tom Parks' house on the day of the homicide; but the evidence is clear and emphatic that these particular and peculiar footprints of the defendant were

traced *running* from near the bridge to where both they and the woman's tracks turned off to the right, and that some of the described peculiar running footprints fell into the footprints of the woman; and it was also shown that these peculiar tracks as shown by the cast ceased to show from this point, and thus did not continue on out to the Huffacre Road, as the defendant in his statement claimed that he went.

*Judgment affirmed. All the Justices concur, except Duckworth, P. J., absent on account of illness, Head, J., who dissents, and Wyatt, J., who took no part in the consideration or decision of this case.*