**UNITED STATES of America**
v.
**Listervelt S. WINFREE.**
**Crim. No. 19782.**

United States District Court
E. D. Pennsylvania.

Feb. 9, 1959.

Joseph L. McGlynn, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Jacob Kossman, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

And now, February 9, 1959, after consideration of evidence produced at the hearing held January 13, 1959, and by stipulation, arguments of counsel, and the attached documents containing au-

thorities, it is ordered that defendant's motion for suppression of evidence is denied.

Defendant, Listervelt S. Winfree, was indicted on November 12, 1958, for attempting to evade income taxes for the years 1952 to 1955 in violation of 26 U.S. C.A. § 145(b) (I.R.C.1939) and 26 U.S. C.A. § 7201 (I.R.C.1954). The present matter is before this court on defendant's motion to suppress (see Document No. 4 in Clerk's file) all evidence obtained, directly or indirectly, by the agents of the Internal Revenue Service from their interrogation of Spurgeon Winfree, wife of defendant, on February 19, 1957,[1] and from their phone calls to Mrs. Winfree on February 27, 1957, and March 19, 1957.

▇ In support of his motion to suppress evidence, defendant relies on the recent United States Supreme Court case of Hawkins v. United States, 1958, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125, in which the Supreme Court sustained the common-law rule that one spouse is incompetent to testify against the other in a criminal trial without the consent of the other. Mr. Justice Black used this language at 358 U.S. 77, 79 S.Ct. 138:

> "The basic reason the law has refused to pit wife against husband or husband against wife *in a trial where life or liberty is at stake* was a belief that such a policy is necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well. Such a be-

lief has never been unreasonable and is not now."[2] (Emphasis supplied.)

▇ However, the information was not secured from Mrs. Winfree in any judicial proceeding or trial, much less a trial where life or liberty was at stake. The information was given voluntarily in an extra-judicial investigation, without the violation of any provision of the laws or Constitution of the United States. The defendant has no knowledge of what his wife did, or did not, say on this occasion. The defendant's counsel, in his able brief, has not pointed to any federal case holding that judicial supervision of the administration of criminal justice in the federal courts requires federal agents to refrain from securing, in the extra-judicial investigation of federal crimes, information of this type from a witness who is incompetent to testify at a trial where their procedure is not a violation of federal rules for the guidance of conduct such as F.R.Crim.P. 41(c), 18 U.S. C.A.,[3] F.R.Crim.P. 5(a),[4] and 47 U.S. C.A. § 605.[5] In McNabb v. United States, 1943, 318 U.S. 332, at page 347, 63 S.Ct. 608, 616, 87 L.Ed. 819, the court said:

> "We are not concerned with law enforcement practices except in so far as courts themselves become instruments of law enforcement. * * And the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law."

This record discloses no disregard of fair procedure imposed by law.[6] Mrs.

1. This interview between Mrs. Winfree and Special Agents Lynn and Segal was instigated by Agent Lynn and lasted from approximately 1:10 P.M. to 3:55 P.M., resulting in a statement, taken under oath and at present in the possession of the Government, in the form of 283 questions and answers.

2. In this connection, see Mr. Justice Black's statement at 358 U.S. 77, 79 S. Ct. 138: "*Adverse testimony given in criminal proceedings* would, we think,

be likely to destroy almost any marriage." (Emphasis supplied.)

3. See Rea v. United States, 1956, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233.

4. See McNabb v. United States, 1943, 318 U.S. 332, 342, 63 S.Ct. 608.

5. See Benanti v. United States, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126.

6. Cases such as United States v. Pack, D.C.Del.1956, 140 F.Supp. 121, 129, relied on by defendant, involved such basic

Winfree was called on the phone on February 18 by the federal agent, who stated that he wanted to question her concerning joint income tax returns and income tax liabilities of her husband and herself. She agreed to come to the agent's office the next afternoon. She was informed of her right to refuse to answer any questions or make any statements that might tend to incriminate her. She was warned that anything she said might be used against her in criminal proceedings or otherwise.[7] This situation is quite different from those cases involving issuance of a subpoena, order, or other court process requiring one spouse to testify against another spouse or punishing such spouse for failure to do so.[8]

These facts have been stipulated:

A. Listervelt S. Winfree and Spurgeon Winfree, his wife, separated in the summer of 1956 and they were not living together in February and March 1957.

B. Listervelt S. Winfree and Spurgeon Winfree have several children who are living with their mother. An order has been entered by the Municipal Court of Philadelphia County requiring Listervelt S. Winfree to make regular payments to Spurgeon Winfree for support of herself and the children.

C. No divorce action has been instituted by either Listervelt S. Winfree or Spurgeon Winfree to terminate their marriage.

■ The above stipulated facts, together with the following facts which have been assumed by the trial judge, show the applicability of the policy stated in the Hawkins case, supra, if any attempt is made to have Mrs. Winfree testify at the trial or to have any agent repeat the extra-judicial statements made by her on issues concerning her husband's guilt:[9]

1. Dr. Winfree did not know of the questioning of Mrs. Winfree in February 1957 or of the phone calls mentioned above until after April 1, 1957.

2. Mrs. Winfree had no income in any of the years involved in this indictment (1952–1955) or in any of the tax years being investigated in February and March 1957.

3. There is no evidence that the Internal Revenue Service knew the name of Dr. Winfree's attorney in February and March 1957, and that Service had every reason to believe that if Dr. Winfree did have such an attorney, Mrs. Winfree would not have had the same attorney.[10]

Any extension of the principle stated in the McNabb case, supra, 318 U.S. at

unfairness as to violate the Fifth Amendment, which was not a basis for the Hawkins case, supra, and which is not involved in this case.

7. The defendant objects in his brief, apparently, that his wife was not warned that information she gave might be used against her husband and that she had the right to refuse to answer questions which might incriminate him, but a reading of C–1 (the 23 pages of questions and answers) makes clear that his wife's statement " * * * was entirely voluntary and understandingly given." See United States v. Burdick, 3 Cir., 1954, 214 F.2d 768, 773; cf. Biggs v. United States, 6 Cir., 1957, 246 F.2d 40.

8. Cf. Blau v. United States, 1951, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306;

Taylor v. State, 1952, 220 Ark. 953, 251 S.W.2d 588.

9. See, for example, Weaver v. State, 1942, 73 Okl.Cr. 416, 121 P.2d 1016. It is not necessary to consider here whether extra-judicial statements, made by one spouse after proper warning, concerning the income of that spouse would be admissible at the trial if that spouse was being tried for violation of 26 U.S.C.A. §§ 145(b) and 7201 in the filing of a joint income tax return. As stated above, Mrs. Winfree had no income during the years in question.

10. This finding is made because of defendant's reliance on the case of McArdle v. American Association of Railroads, D.C.W.D.Pa.1958, 167 F.Supp. 489, in his communication of 1/27/59.

pages 340–341, 63 S.Ct. 608, to the factual situation presented by this case should be made by Congress or the federal appellate courts.[11]

11. Many state cases permit the use of information secured extra-judicially from one spouse in the process of investigation. See Commonwealth v. Johnson, 1906, 213 Pa. 432, 62 A. 1064; Welker v. New York Cent. R. R., 1922, 275 Pa. 82, 118 A. 615; State v. Schifsky, 1955, 243 Minn. 533, 69 N.W.2d 89 (limited to interpretation of statute embodying rule); cf. Parks v. State, 1948, 203 Ga. 302, 46 S.E.2d 504; State v. McRae, 1931, 200 N.C. 149, 156 S.E. 800; Huffman v. Com., 1937, 168 Va. 668, 190 S.E. 265.