## 31275. DUHART v. THE STATE.

UNDERCOFLER, Presiding Justice.

Defendant Leon Duhart appeals from his convictions of armed robbery and murder and jury sentences of twenty years plus life, to be served consecutively. He raises two enumerations of error: that the circumstantial evidence does not support the verdict and that the armed robbery conviction should be set aside as a lesser included offense in the murder. We affirm.

1. The evidence, though circumstantial in this case, is sufficient to support the verdicts. The defendant, a nineteen-year-old, apparently began his evening of crime between 8 and 9 o'clock on January 13, 1975, by breaking into Curtis Zeigler's Cadillac parked in downtown Macon. His fingerprints were discovered inside, and on the outside of the passenger door. Zeigler's .357 magnum, blue steel Smith & Wesson was missing.

About 11 o'clock, as Mr. William McElroy approached his parked red Volkswagen, a man in a three-quarter length leather jacket, whom the victim later identified from photographs and in a lineup as the defendant, shoved a blue steel magnum pistol against him and demanded his car keys. Since McElroy's wife had them he could not produce the keys and the defendant shot him in the arm, and fired another shot through the windshield. Defendant then threatened Mrs. Wanda McElroy who had just arrived, telling her to get in the car or he'd shoot her also. He took her money, told her to take off her pants and shot her between the legs. He then told them to get out of the car or he'd kill them. They walked about ten feet before they collapsed. A bullet recovered from the VW most probably was fired from a .38 or .357 Smith & Wesson, according to the ballistics expert who testified at trial. No fingerprints belonging to the defendant were found on the VW.

A few minutes later, a driver for the A.Y.S. Cab Company was approached by a "wild-eyed" young male who desired to go to the Tindall Heights area of the city. After the driver requested a specific address, the rider changed his mind saying he'd get a less curious Yellow Cab driver to take him to his destination. The driver

described him as acting crazy, not normal and as wearing a dark coat. He was able to pick out defendant's picture from several photographs.

Three Yellow Cab drivers and dispatchers identified the defendant as the person who came into their office seeking a ride to the Tindall Heights area. Since he had to wait ten to fifteen minutes for a taxi to become available, they had time to study his appearance. Each gave a similar description and picked his photo from several others. They also noted that the defendant appeared nervous when a siren was heard passing by.

When the victim, taxi driver A. B. Shirah, arrived to pick up the defendant, at about 11:30, he was sent with the defendant to the Dempsey Hotel to get another fare going in the same direction. Shirah called in about five minutes later saying no one had appeared from the hotel and he was proceeding to Tindall Heights with the defendant. At 11:45, the dispatcher tried to radio Shirah to make another pick up on his way back into town, but there was no answer.

The taxi drivers testified that Shirah had been working since about three that afternoon and that he had about sixty dollars in his right front pants pocket. A minister found Shirah's body lying outside his cab in the Tindall Heights area about three blocks from the defendant's home. His pockets were turned inside out and he had been shot in the back; the bullet had passed through his body. The medical examiner testified that the wound had been made by either a .357 or .38 bullet which had been fired from a gun pressed against the victim's back. The bullet was not recovered, but the defendant's fingerprint was found on the front window on the driver's side of the taxi.

We find this evidence meets the criterion set out in Code Ann. § 38-109: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." *Woodruff v. State,* 233 Ga. 840 (213 SE2d 689) (1975); *Parks v State,* 203 Ga. 302 (46 SE2d 504) (1948). The evidence supported the verdicts of guilty on both the murder and armed robbery, and the trial court did not err

in overruling defendant's motion for a new trial.

2. Defendant also contends that armed robbery is a lesser included offense of murder and thus that conviction and sentence should be vacated. He urges *Burke v. State,* 234 Ga. 512 (216 SE2d 812) (1975) in support of his argument. That case is clearly distinguishable as it involves a lookout during an armed robbery who was convicted of the malice murder of the shopkeeper, actually killed by an accomplice. There, the malice necessary to the murder conviction was shown by the accused's participation in the armed robbery. Since the armed robbery was an essential element of the murder, the armed robbery was a lesser included offense and was vacated.

In the case now before us, however, the armed robbery is not an essential element of the murder, but is a separate crime against the same victim. *Burke v. State,* supra (see Division 4, Hill, J., concurring).

*Judgment affirmed. All the Justices concur, except Gunter, J., who concurs specially.*

Argued July 12, 1976 — Decided September 7, 1976.

*Claude W. Hicks, Jr.,* for appellant.

*Fred Hasty, District Attorney, W. Donald Thompson, Walker P. Johnson, Assistant District Attorneys, Arthur K. Bolton, Attorney General, Harrison Kohler, Staff Assistant Attorney General,* for appellee.

Gunter, Justice, concurring specially.

I concur in the judgment of the court that affirms the imposition of a life sentence, recommended by a jury, upon a convicted murderer. I write this concurring opinion because this case is a vivid example of the exercise of unguided, unchanneled, and uncontrolled discretion by a jury in making its decision to impose or not impose the death penalty in Georgia's capital punishment system.

The jury convicted the appellant for having committed murder; the prosecution sought the imposition of the death penalty for the commission of that crime; the jury found one statutory aggravating circumstance present beyond a reasonable doubt; and yet the jury

recommended and extended mercy to the appellant and imposed a life sentence rather than the death penalty.

The current system for imposing the death penalty was enacted by the Georgia General Assembly in 1973, and my brothers on this court have consistently upheld the constitutionality of this system since its enactment. See *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974). I concurred in the judgment in *Coley* that set aside the death penalty, but my concurrence was on the ground that the Georgia system is unconstitutional. I have continued to dissent in every subsequent case in which the death penalty was imposed and its imposition affirmed by this court. See *Street v. State,* 237 Ga. 307 (1976).

In 1974, the Georgia General Assembly enacted a criminal procedure statute, Ga. L. 1974, pp. 352 et seq. Section Two of this 1974 Act, after enactment, reads: "In all capital cases, other than those of homicide, when the verdict is guilty, with a recommendation to mercy, it shall be legal and shall be a recommendation to the judge of imprisonment for life. Such recommendation shall be binding upon the judge."

Section 7(b) of this 1974 Act, after enactment, reads: "In all cases in which the death penalty may be imposed and which are tried by a jury, upon a return of a verdict of guilty by the jury, the court shall resume the trial and conduct a pre-sentence hearing before the jury. Such hearing shall be conducted in the same manner as pre-sentence hearings conducted before the judge as provided in subsection (a) of this Section. Upon the conclusion of the evidence and the arguments, the judge shall give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in Code § 27-2534.1, exist *and whether to recommend mercy for the defendant.* Upon the findings of the jury, the judge shall fix the sentence within the limits prescribed by law."

In my dissenting opinion in *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974), after quoting these 1974 statutory revisions, I said: "I conclude that these 1974 enactments by the Georgia General Assembly expressly placed discretion in the sentencing fact-finder to impose

or not impose the death penalty in any case. And this is what I understand to be constitutionally impermissible under the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346)." P. 130.

It is my view, under these 1974 statutory revisions, that a trial judge must charge sentencing juries in all capital cases that they may recommend mercy for the convicted party, that such a recommendation is binding upon the court, and that such a recommendation means that the convicted party will be sentenced to life imprisonment by the court.

In Calton v. Utah, 130 U. S. 83 (1889), the Supreme Court of the United States reversed a conviction and the imposition of the death penalty by a jury, because the jury had not been advised of its right to make such a recommendation under the prevailing statute. The court, speaking through Mr. Justice Harlan, said: "While in this case the jury were instructed as to what constituted murder in the first and second degrees, they were not informed as to their right, under the statute, to recommend imprisonment for life at hard labor in the penitentiary in place of the punishment of death. If their attention had been called to that statute, it may be that they would have made such a recommendation, and thereby enabled the court to reduce the punishment to imprisonment for life. We are of the opinion that the court erred in not directing the attention of the jury to this matter. The statute evidently proceeds upon the ground that there may be cases of murder in the first degree, the punishment which by imprisonment for life at hard labor will suffice to meet the ends of public justice. Its object could only have been met through a recommendation by the jury that the lesser punishment be inflicted, and it is not to be presumed that they were aware of their right to make such recommendation." Pp. 86, 87.

I think that sentencing juries in capital cases in Georgia can, in their uncontrolled discretion, make a recommendation of mercy in any capital case and thereby require the imposition of a life sentence.

In *Coley,* supra, the majority said: "Can Georgia's new

statute 'produce evenhanded justice'? . . . Logically, it is not discretion per se which must be condemned, but it is unguided discretion that does not 'produce evenhanded justice.' " P. 834. The implication of the majority's holding in *Coley* is that Georgia's current system for imposing the death penalty requires "guided discretion" that does produce "evenhanded justice." To envision that result in the current Georgia system is, to me, nothing more than and nothing less than judicial self-deception.

The charge of the trial court to the sentencing jury in the instant case on the subject of punishment for murder was: "Members of the Jury, the defendant in this case has been found guilty of Murder which was count one on the indictment and also found guilty of the Armed Robbery which is count two of the indictment, and now it is your duty to make certain findings which would determine the penalty that shall be imposed as the punishment for the offenses. Now, the charge which I am about to give you will apply to the Murder charge and you will consider the same in relation to this count. Now, under the law of this State every person found guilty of Murder shall be punished by death or by imprisonment for life. In arriving at your findings, which will determine the punishment to be imposed for this offense, you are authorized to consider all the evidence received here in court, presented by the State and the defendant, throughout the trial before you.

I charge you that in all cases for which the death penalty may be authorized, the law provides that the Judge shall instruct the Jury concerning mitigating circumstances or aggravating circumstances which the jury may consider in making the decisions which will determine the punishment to be imposed.

Mitigating circumstances are those which do not constitute a justification or excuse for the offense in question, but which, in fairness, and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame.

Aggravating circumstances are those which increase the guilt or enormity of the offense or add to its injurious consequences [sic].

The law provides that where upon a trial by jury if a

person is convicted of an offense that may be punishable by death, a sentence of death shall not be imposed unless the jury's verdict includes a finding of at least one statutory aggravating circumstance and a recommendation that such sentence be imposed. Where a statutory aggravating circumstance is found and a recommendation of death is made the Court shall sentence the defendant to death.

Where a sentence of death is not recommended by the jury, the court shall sentence the defendant to imprisonment as provided by law.

Unless the jury trying the case makes a finding of a statutory aggravating circumstance and recommends the death sentence in its verdict, the Court shall not sentence the defendant to death.

I charge you that the State contends that a statutory aggravating circumstance exists in this case. The statutory aggravating circumstance which the State contends exists in this case is as follows: 'The offense of Murder was committed while the offender was engaged in the commission of another capital felony, to wit: Armed Robbery.'

In arriving at your verdicts in this case, you will consider evidence as to the mitigating circumstances which the defendant contends exists in this case and you will also consider evidence as to the statutory aggravating circumstance which the State contends exists in this case.

If you find beyond a reasonable doubt that the State has proved the existence in this case of the aggravating circumstance, as contended for by the State, and as given you in charge by the Court, then you would be authorized to recommend the imposition of the sentence of death, but you would not be required to do so.

If you recommend the imposition of a sentence of death, the Court would be required to sentence the defendant to death by electrocution.

If you find beyond a reasonable doubt that the State has proved the existence in this case of the aggravating circumstance, as contended for by the State, and as given you in charge by the Court, that is, the statutory aggravating circumstance, you would also be authorized

to recommend the defendant to the mercy of the Court, which is a recommendation you may make either with or without a reason. You may make it for any reason that is satisfactory to you, or without a reason. You may make it arbitrarily, as a matter of course, or as a matter of discretion.

If you recommend the defendant to the mercy of the Court, the Court would be required to sentence the defendant to confinement in the State Penitentiary for and during the term of his natural life.

If you do not find beyond a reasonable doubt that the State has proved the existence of the statutory aggravating circumstance, about which the Court has charged you, then you would not be authorized to consider the penalty death and you would make no recommendation. If you make no recommendation the Court would be required to sentence the defendant to confinement in the State Penitentiary for and during the term of his natural life.

Your verdict must be in writing. We will furnish . . .

By Mr. Thompson:

We've got two pages to this indictment. It could probably go on the inside page.

By the Court:

Is that agreeable to the defense counsels?

(Defense counsels indicate that it is agreeable.)

By the Court:

Let me restate that then. Your verdict must be in writing and be affixed to the back of this indictment and that's by consent of counsel for the State and for the defendant.

Now, if you unanimously find beyond a reasonable doubt that the statutory aggravating circumstance, as contended by the State, and as given you in charge by the Court exists in this case, and you determined to recommend the punishment of the defendant to death, then the form of your verdict in that event would be as to count one upon which you would make a finding and the form of that verdict will be, 'We the jury find the following statutory aggravating circumstance to exist in this case.' You will then write out in your verdict the statutory aggravating circumstance which you find to exist using

the exact language given you in charge by the Court which you will have out with you for reference and this is the statutory aggravating circumstance that the State contends in this case, and following that language you would add: 'And we recommend that the defendant be punished by death.' That verdict would mean that the Court would be required to sentence the defendant to death by electrocution.

Now, I charge you further that if you believe beyond a reasonable doubt the State has proved the existence of the statutory aggravating circumstance, about which the Court has charged you, you may recommend the defendant to the mercy of the Court. In that event, the form of your verdict would be: 'As to count number one, we make the following finding,' and to that you would add, 'We the jury recommend the defendant to the mercy of the Court.' That verdict would require the Court to sentence the defendant to confinement in the penitentiary for and during the term of his natural life.

Now, if you do not find such statutory aggravating circumstance to exist beyond a reasonable doubt, then you would make no recommendation for punishment of the defendant. In that event, the form of your verdict would be: 'As to count one, we the jury find that there is no statutory aggravating circumstance in this case.' That verdict would mean that the Court would sentence the defendant to confinement in the penitentiary for and during the term of his natural life."

This charge to the jury in this case certainly belies the concept of guided discretion that produces evenhanded justice. The Georgia statutory system extends to sentencing juries in capital cases the pure discretionary power to dispense mercy.

I have concluded that the Georgia judiciary has been saddled by the legislative branch of our state government with two concepts that collide with each other and are therefore totally incompatible. The first concept is that of producing evenhanded justice. That is certainly the desired and, to me, paramount goal to be achieved in a judicial system. However, that goal cannot be achieved in the capital punishment area when the second concept, the dispensation of mercy, is permitted by statute. The

legislature has said to the judiciary: Produce evenhanded justice in the capital punishment area, but dispense mercy in any capital case at your discretion. The two concepts cannot, in my view, be concurrently implemented by the judiciary. The statutory authorization to sentencing juries in capital cases to dispense mercy in their discretion is wholly incompatible with the judicial production of evenhanded justice. And to say that it is, is, again, judicial self-deception.

In the capital punishment area, the legislative branch of government enacts laws that permit or prohibit the imposition of the death penalty by the judiciary. The legislature has nothing at all to do with the imposition of the death penalty upon a convicted violator of the law; and it has nothing at all to do the with carrying out of the death penalty once such a penalty has been imposed. The imposition is the responsibility of the Judicial Department, and the carrying out is the responsibility of the Executive Department. Therefore, once a death penalty law has been enacted, legislators have no further official involvement in the capital punishment process.

The judicial branch of our government is charged with the responsibility of imposing the death penalty or not imposing the death penalty in conformity with the Constitution and laws enacted by the legislative branch. And by the judiciary I mean to include participating jurors, trial judges, and appellate judges.

Once a death penalty in a concrete case has been imposed by the judiciary pursuant to statutes enacted by the legislative branch, the buck then passes to the Executive Department. It must carry out this ultimate penalty or determine that it shall not be carried out. The President, the Governors of the individual states, and, in some instances, constitutional Boards of Pardon and Parole are constitutionally clothed with the power to commute death penalty sentences imposed by the judiciary. See Shick v. Reed, 419 U. S. 256 (95 SC 379, 42 LE2d 430) (1974).

I have therefore concluded that the paramount and overriding function of the judiciary in the death penalty area is to produce evenhanded justice. The judiciary cannot do that when sentencing juries are authorized by statute to dispense mercy, in their discretion, to convicted

murderers that they select for such dispensation. I would therefore hold that Georgia's current system for the imposition of the death penalty by the judiciary cannot produce evenhanded justice, and it is therefore unconstitutional in that it violates three specific provisions of the Georgia Constitution. See my dissenting opinion in *Street v. State,* supra.

I have also concluded that the dispensation of mercy in the death penalty area, if mercy is to be dispensed, must take place in the Executive Department and not the judiciary. The executive can carry out an imposed death penalty; the executive can commute an imposed death penalty to a sentence of life imprisonment with the condition of non-parole attached (Schick v. Reed, supra); and the executive can take other merciful avenues that are not constitutionally proscribed.

It is clear that in the case at bar the jury dispensed mercy to the appellant; the trial judge was required by statute to impose a life sentence; this court can only affirm the imposition of that life sentence; and such dispensation of mercy by the jury in this discretionary system prohibits production by the judiciary of evenhanded justice.

Though I concur in the judgment in this case, I will dissent in all other capital cases under this system where the jury arbitrarily declines to dispense mercy and, in its discretion, arbitrarily imposes the death sentence.

I am in thorough agreement with the statement of Mr. Justice Rehnquist, contained in his dissenting opinion in Woodson v. North Carolina, — U. S. — (96 SC 2978, 49 LE2d 944) (1976): "Under the Georgia system, this jury is free to recommend life imprisonment, as opposed to death, for no stated reason whatever. The Georgia Supreme Court cannot know, therefore, when it is reviewing jury sentences for life in capital cases, whether the jurors found aggravating circumstances present, but nonetheless decided to recommend mercy, or instead found no aggravating circumstances at all and opted for mercy." (Rehnquist, J., dissenting). 49 LE2d 969.

HILL, Justice, concurring.

I concur in the opinion and judgment of the court. I write this concurring opinion solely because of the

specially concurring opinion (see Rule 26(c)), which should be read first.

As Mr. Justice Stewart wrote in Gregg v. Georgia, — U. S. — (96 SC 2909, 49 LE2d 859): "Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." See also *Moore v. State*, 232 Ga. 861, 868 (213 SE2d 829) (1975) (Hill, J., concurring).