## 36221. ADAMS v. THE STATE.

UNDERCOFLER, Chief Justice.

Adams was convicted on circumstantial evidence of the murder of Beatrice Burton and sentenced to life imprisonment. He appeals. We affirm.

1. The victim, a friend and co-worker of the appellant, was found shot to death on Adriatic Court in Gwinnett County on the morning of May 18, 1979. She had been shot once in the head with a .38 caliber pistol. After a thorough investigation, police concluded Adams had induced the victim, by promising to pay her $200, to take out a $200,000 life insurance policy, and then had killed her to collect the proceeds.

Adams was arrested and indicted. At trial, he pled the general issue of not guilty.

The State's evidence showed the victim's body was sitting in her white Pinto in an industrial park in Norcross. Medical testimony placed the time of death "roughly" between 9:30 p.m. on the evening of May 17 and 1:30 a.m. on the morning of May 18. The shot had been fired about two inches from her head. No weapon was

found at the scene; the bullet was too fragmented to be used in ballistics tests and no evidence of robbery or other assault was present. A daughter testified Mrs. Burton always drove with the doors locked and never picked up hitchhikers.

A close friend, Rosella Lee, testified the victim had earlier asked her advice about an offer she had received from an unnamed co-worker who wanted to pay her $200 to take out an insurance policy in her name which would be transferred to his wife who was ill. The co-worker had promised to pay all costs and the premiums. This witness advised against the scheme, but the victim persisted. Rosella Lee then referred Mrs. Burton to her insurance agent, Herschel Grangent.

Grangent testified Mrs. Burton called him on February 13, 1979, and he met with appellant and the victim at appellant's home. Mrs. Burton said she was interested in a $100,000 insurance policy. Grangent explained the alternative plans of insurance and premium costs before departing. He was called by Mrs. Burton several days later. She told the agent she wanted to make an application. Grangent again went to appellant's home and met the pair. Mrs. Burton had decided to take out a $200,000 renewable term policy and paid $192 cash quarterly premium to bind the contract. When designating a beneficiary, Mrs. Burton filled in appellant's name. The agent advised the company probably wouldn't issue the policy because appellant lacked an insurable interest. He also advised that the beneficiary could be changed to anyone Mrs. Burton chose after the policy was accepted. Then, she inserted her daughter's name as the sole beneficiary. Grangent also testified the policy was issued and a change of beneficiary executed by Mrs. Burton naming appellant the sole beneficiary. The agent stated appellant had received the approved change of beneficiary form in the mail and had shown it to Grangent when he delivered the policy to appellant at his home. After examining it, Grangent inserted it in the policy and gave both to appellant. Other evidence showed appellant kept the policy in his apartment and neither he nor the victim ever disclosed its existence to their friends or relatives. During the preliminary investigation, officers, who had become aware of the existence of the policy, asked appellant if he knew of any benefit that would be due the victim's children and he did not disclose the policy's existence in his initial statement. In a second statement to police, made a few minutes later, he did reveal the policy existed but he stated Ava Maria Burton was the beneficiary and that he had no financial interest in the policy. However, officers testified they went to appellant's home with him where he produced the policy. He acted surprised and confused

when the change-in-beneficiary form, naming him as sole beneficiary, was found. From the stand, appellant stated he was afraid to tell of the policy because the police might think he killed the victim.

Through the testimony of investigating officers, the State introduced the substance of appellant's statements. He had told them he took his girlfriend, Geraldine Brown, to the movie on May 17, leaving her at her home about 10:00 p.m. He went home and called Mrs. Burton at 10:30 p.m. He had promised to loan her $200. She came, stayed "5 to 10 minutes" and left. He left at the same time to get gas, returning at 11:15. He said he called his girlfriend between 11:30 and 12:00 to tell her he had gotten home all right. He also revealed to police he had a .38 caliber silver-plated pistol. He did not reveal he also possessed a .38 caliber blue-steel pistol he had obtained from his father.

His girlfriend, Geraldine Brown, testified for the State, stating appellant left at 10:00 p.m. and refused to spend the night because he "had some business to tend to." She could not verify that appellant called her at 11:30. She also testified she was upstairs at appellant's home when Mrs. Burton and the agent came by. Appellant came upstairs that night, turned up the radio, and told her not to listen to any conversation going on downstairs. She stated appellant had told her several weeks earlier that he was going to come into a good deal of money soon, and he was going to buy a nightclub. He did not disclose the source of the funds.

In other testimony, the State produced another co-worker, a gunsmith. He testified appellant discussed a .38 caliber silver-plated pistol he owned. During this conversation, appellant inquired if the pistol would "buck" less if several small holes were drilled in the barrel and how it could be made to shoot with less noise.

Appellant took the stand and testified as the sole defense witness. He sought to show that he was innocently involved, that Mrs. Burton had asked him to be sole beneficiary on her policy and to act as a trustee of the funds in her children's behalf. He explained he met Mrs. Burton on May 17 to give her a $200 loan. He said he left to get gas for his truck when she left, he had not seen in what direction she went, and he had not killed her. He admitted talking to the gunsmith, but he didn't recall any conversation about silencing the pistol. He said his remark to Geraldine Brown about "coming into some money" referred to his taking over his father's "numbers" business, and he didn't tell officers about having his father's blue-steel pistol because he thought they were asking about guns he "owned."

After a careful review of this evidence and of other testimony given, we conclude the evidence, though circumstantial, is sufficient to warrant a conviction. Code Ann., § 38-109; *Duhart v. State,* 237 Ga. 426, 427 (1) (228 SE2d 822) (1976). We further conclude the evidence was sufficient, when considered in the light most favorable to the prosecution, to convince a rational trier of fact as to the guilt of the appellant beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). There was no error in denying appellant's motion for directed verdict at the close of the evidence or in denying his motion for new trial. Enumerations one and two are without merit.

2. It was not error to refuse to charge on alibi. The range of evidence with respect to time and distance was not such as to reasonably exclude the possibility of appellant's presence at the scene of the crime at the time of its commission. Code Ann. § 38-122. See *Weaver v. State,* 199 Ga. 267 (34 SE2d 163) (1945); *Parrott v. State,* 149 Ga. App. 377 (254 SE2d 497) (1979).

3. We have previously decided contra to appellant's contention that the trial court's charge, i.e. ". . . a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts . . ." is burden-shifting. In *Skrine v. State,* 244 Ga. 520-521 (260 SE2d 900) (1979), a similar charge to that given here was thoroughly discussed and found to present a permissive presumption for jury consideration. This charge was not similar to that considered in Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450 61 LE2d 39) (1979).

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 13, 1980 — DECIDED JULY 1, 1980.

*Glenn Zell,* for appellant.

*Bryant Huff,* District Attorney, *Arthur K. Bolton,* Attorney General, *Michael R. Johnson,* Assistant Attorney General, for appellee.